**DEREK SMITH LAW GROUP, LLP**
Matt E.O. Finkelberg, State Bar No. 329503
633 West 5th Street, Suite 3250
Los Angeles, CA 90071
Telephone:     (310) 602-6050
Facsimile:     (310) 602-6350
Email:          matt@dereksmithlaw.com

Attorney for Plaintiff JANE DOE,

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE,<br><br>                    Plaintiff,<br><br>         v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER FOR THE SOCIAL SECURITY ADMINISTRATION; and ISRAEL GUZMAN, individually;<br><br>                    Defendant. | **COMPLAINT**<br><br>  Case No.<br><br>1. DISCRIMINATION UNDER TITLE VII;<br>2. HOSTILE WORK ENVIRONMENT AND QUID PRO QUO SEXUAL HARASSMENT UNDER TITLE VII;<br>3. RETALIATION UNDER TITLE VII;<br>4. SEXUAL BATTERY;<br>5. SEXUAL ASSAULT;<br>6. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;<br>7. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS<br><br>  **DEMAND FOR JURY TRIAL** |

Plaintiff, Jane Doe, by and through Plaintiff's attorneys, DEREK SMITH LAW GROUP, LLP, hereby complains of Defendants, KILOLO KIJAKAZI, in their official capacity as the Acting Commissioner of the United States Social Security Administration; and ISRAEL GUZMAN, individually; upon information and belief, as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this action charging that Defendants violated Plaintiff's rights pursuant to, *inter alia*, Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et. seq. ("Title VII"), and the laws of the State of California, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff suffered as a result of being discriminated against and harassed by Plaintiff's employer on the basis of Plaintiff's sex, gender, and suffered sexual harassment, sexual assault, sexual battery, along with a hostile work environment, and retaliation.

## JURISDICTION AND VENUE

2.      Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

3.      Additionally, 28 U.S.C. §1331 states that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

4.      This Court has supplemental jurisdiction over the related state law and local ordinance claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claims under California law form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with Plaintiff's federal law claims, and the parties are identical.

5.      On or about August 28, 2020, Plaintiff submitted a Complaint with the Equal Employment Opportunity Commission ("EEOC").

6.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Central District of California because as described further herein, a substantial part of the events or omissions giving rise to the claims herein occurred in San Bernardino County, State of California and within the Judicial District for the Central District of California. Moreover, Plaintiff resides in this District, and DEFENDANTS operate their business in this District.

7.      Accordingly, this action properly lies in the Central District of California pursuant to 28 U.S.C. 1391.

## THE PARTIES

8.     Plaintiff is seeking damages to redress the injuries Plaintiff has suffered as a result of being harassed and discriminated against by Plaintiff's employer on the basis of Plaintiff's sex and gender; and the sexual harassment, sexual assault, sexual battery, hostile work environment, and retaliation this discrimination created.

9.     At all times material, Plaintiff Jane Doe (hereinafter referred to as "Plaintiff"), was and is an individual woman residing in Apple Valley, California.

10.     At all times material, DEFENDANT KILOLO KIJAKAZI ("SSA") is named in their official capacity as the Acting Commissioner of the United States Social Security Administration, a federal governmental entity doing business in the State of California, with their principal place of business located at 13955 Park Ave., Victorville, CA 92392. Defendant SSA held supervisory authority over Plaintiff, controlling various tangible aspects of Plaintiff's employment, including the ability to hire and fire Plaintiff.

11.     At all times material, Defendant ISRAEL GUZMAN ("GUZMAN"), named in their individual capacity, was and is a Supervisor for Defendant SSA. Defendant GUZMAN held supervisory authority over Plaintiff, controlling various tangible aspects of Plaintiff's employment, including the ability to hire and fire Plaintiff.

12.     At all times material, Defendants were Plaintiff's joint employers.

13.     Plaintiff is informed and believes, and based thereon alleges, that each DEFENDANT sued in this action acts and acted, in all respects pertinent to this action, as the agent of the other DEFENDANTS, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and that the acts of each DEFENDANT are legally attributable to the other DEFENDANTS.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

14.     Plaintiff has met all procedural requirements for filing this Complaint. Plaintiff filed Plaintiff's timely Formal Complaint of Discrimination on July 28, 2020.

15.     Around November 25, 2020, Plaintiff received Plaintiff's Final Agency Decision regarding Plaintiff's Complaint for Discrimination. The November 25, 2020 Final Agency found, "Complainant failed to contact an EEO Counselor timely in accordance with 29 C.F.R. §1614.107(a). Therefore, Complainant's entire complaint alleging discrimination as cited above is not dismisses as untimely filed in accordance with EEOC 29 C.F.R.1614.107(a)."

16.     Around December 24, 2020, Plaintiff appealed the November 25, 2020 Final Agency Decision with the UNITED STATES OF AMERICA

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION OFFICE OF FEDERAL OPERATIONS ("EEOC OFO").

17.    Around April 26, 2021, the EEOC OFO reversed the November 25, 2020 Final Agency Decision stating, "We find that Complainant's May 28, 2020 EEO Counselor contact was timely." The EEOC OFO additionally stated, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. In the alternative, you may file a civil action after one hundred and eighty (180) calendar days of the date you filed your complaint with the Agency, or filed your appeal with the Commission."

18.    Around January 28, 2022, Defendants' issued a Final Agency Decision which stated, "Complainant also has the right to file a civil action in an appropriate U.S. District Court (a) withing 90 days of receipt of the agency final action on an individual."

19.    Plaintiff has filed this action within 90 days of receipt of the Final Agency Decision and has therefore exhausted Plaintiff's Administrative Remedies and is entitled to file the instant Complaint.

## **FACTUAL ALLEGATIONS**

20.    At all times material, Plaintiff was and is a female residing in the State of California.

21.     Around June of 1987, Defendant SSA hired Plaintiff as a Claims Specialist for Defendant SSA. Plaintiff works at Defendant SSA's Field Office A87.

22.     Beginning around 2003, Defendant GUZMAN began working at Field Office A87.

23.     Throughout Plaintiff's employment, Defendant GUZMAN constantly leered at Plaintiff and undressed Plaintiff with Defendant GUZMAN's eyes while calling Plaintiff ***"sexy," "very attractive,"*** and ***"very pretty."***

24.     Throughout Plaintiff's employment, Defendant GUZMAN regularly told Plaintiff ***"You are very sexy," "I like those jeans on you,"*** and ***"Don't you look really good in those jeans."***

25.     Each time Defendant GUZMAN made an advance towards Plaintiff or called Plaintiff ***"sexy,"*** Plaintiff rebuffed Defendant GUZMAN's sexual advances and told Defendant GUZMAN to stop.

26.     Defendant GUZMAN created a hostile work environment for Plaintiff because of Plaintiff's sex and gender.

27.     Defendant GUZMAN disparately treated and discriminated against Plaintiff because of Plaintiff's sex and gender.

28.     Defendant GUZMAN sexually harassed Plaintiff.

29.     Around 2004, Defendant GUZMAN was transferred to Defendant SSA's Field Office in Barstow.

30.     Around 2008, Defendant GUZMAN was transferred back to Defendant SSA's Field Office in Victorville.

31.     Defendant GUZMAN was transferred back to the Victorville Field Office as a result of complaints of sexual advances and sexual harassment made by Defendant GUZUMAN towards Defendant GUZMAN's clients.

32.     Upon Defendant GUZMAN's return to the Victorville field office, Defendant GUZMAN continued to contact Plaintiff, making sexual advances and comments to Plaintiff. Plaintiff continued to tell Defendant GUZMAN to stop and reminded Defendant GUZMAN that Defendant GUZMAN was a married man and that Defendant GUZMAN needed to stop bothering Plaintiff.

33.     Throughout Defendant GUZMAN's return, Defendant GUZMAN licked Defendant GUZMAN's lips in a sexual nature while talking to Plaintiff.

34.     Throughout Defendant GUZMAN's return, Defendant GUZMAN told Plaintiff, ***"I like the way you dress," "Your perfume is very sexy,"*** and "***You have good curves."*** Plaintiff responded by saying, "your comments make me uncomfortable."

35.     Defendant GUZMAN created a hostile work environment for Plaintiff because of Plaintiff's sex and gender.

36.     Defendant GUZMAN disparately treated and discriminated against Plaintiff because of Plaintiff's sex and gender.

37.     Defendant GUZMAN sexually harassed Plaintiff.

38.     Around 2009, Defendant GUZMAN returned to the Barstow field office.

39.     Around 2013, one of Defendant GUZMAN's co-workers, Norma Garcia, complained to Ms. Garcia's Supervisor, Joshua Stevens, because Defendant GUZMAN was asking clients for sexual favors and showing up at a client's house, making sexual advances.

40.     Around April of 2014, Defendant SSA's Field Office in Barstow closed and Defendant GUZMAN transferred back to Plaintiff's Field Office in Victorville.

41.     When Defendant GUZMAN returned to Victorville around April of 2014, Defendant GUZMAN walked to Plaintiff's desk around three times a month and told Plaintiff, ***"If you ever need anything, you know where to find me,"*** while licking Defendant GUZMAN's lips in a sexual nature and making sexual moans and sounds. Plaintiff told Defendant GUZMAN, "You are grossing me out."

42.     Throughout Plaintiff's employment, Defendant GUZMAN made comments about Plaintiff's outfit and perfume while licking Defendant GUZMAN's lips in a sexual nature.

43.     Throughout Plaintiff's employment, Defendant GUZMAN physically brushed and rubbed Defendant GUZMAN's body against Plaintiff around three to four times a month. Defendant GUZMAN rubbed himself against Plaintiff so that Defendant GUZMAN's penis and front of Defendant GUZMAN's pants touched Plaintiff's buttocks, hips, and legs.

44.     Defendant GUZMAN sexually harassed, assaulted, and battered Plaintiff.

45.     Defendant GUZMAN created a hostile work environment for Plaintiff because of Plaintiff's sex and gender.

46.     Defendant GUZMAN disparately treated and discriminated against Plaintiff because of Plaintiff's sex and gender.

47.     Around March of 2016, Defendant GUZMAN was promoted to a Technical Expert and became Plaintiff's supervisor.  Upon this promotion, Defendant GUZMAN was able to review, criticize, control, and instruct Plaintiff's work.  Defendant GUZMAN also had the ability to influence the decision to fire Plaintiff and had the ability to fire Plaintiff.  Defendant GUZMAN instructed Claimant what to do, reviewed Claimant's work, and supervised Claimant's job duties and work production.  Defendant

GUZMAN supervised all of Plaintiff's work and Plaintiff was directed and instructed to submit her work to Defendant GUZMAN for his review.

48.     Upon Defendant GUZMAN's promotion, Defendant GUZMAN had the authority to undertake and recommend tangible employment decisions affecting Plaintiff including but not limited to, reporting Plaintiff, writing Plaintiff up, and firing Plaintiff.

49.     Upon Defendant GUZMAN's promotion, Defendant GUZMAN directed Plaintiff's daily work activities and was given the authority to do so by Defendant SSA.

50.     After Defendant GUZMAN became Plaintiff's supervisor, every time Plaintiff spoke to Defendant GUZMAN, Defendant GUZMAN told Plaintiff, ***"Your outfit turns me on," "Your perfume turns me on," "I enjoy looking at you," "You are very attractive,"*** and ***"I find you very attractive."***

51.     After Defendant GUZMAN became Plaintiff's supervisor, Defendant GUZMAN asked Plaintiff, ***"Will you go out with me?"*** Defendant GUZMAN insisted, ***"I can meet you to go dancing."*** Plaintiff rebuffed and denied Defendant GUZMAN's sexual advances by stating, "No, I am married."

52.     Around October of 2016, Plaintiff had caramel candy on Plaintiff's desk. When Defendant GUZMAN saw the candy, Defendant GUZMAN told

Plaintiff, *"I'm like caramel. I do not melt in your hands, I melt in your mouth."*

53.    Around 2016, Defendant GUZMAN began to approach Plaintiff weekly and told Plaintiff, *"I like you," "You turn me on," "I am unhappy with my wife,"* and *"We can make it."* Plaintiff responded, "I am married and so are you. You are a married man with kids. Please stop with the comments." Defendant GUZMAN replied, *"But you like it."* Plaintiff said, "No, I don't. Specifically, since I know what happened in Barstow."

54.    Throughout Plaintiff's employment, almost every time Plaintiff approached Defendant GUZMAN for help, Defendant GUZMAN either licked Defendant GUZMAN's lips, breathed heavily in a sexual manner, made sexual innuendos and comments, looked Plaintiff up and down, made comments in regards to Plaintiff's body, outfit, or perfume, belittled Plaintiff, intimidated Plaintiff, or rudely and aggressively criticized Plaintiff.

55.    Defendant GUZMAN created a hostile work environment for Plaintiff because of Plaintiff's sex and gender.

56.    Defendant GUZMAN disparately treated and discriminated against Plaintiff because of Plaintiff's sex and gender.

57.    Defendant GUZMAN retaliated against Plaintiff because of Plaintiff's complaints of sexual harassment, sexual assault, sexual battery, discrimination based on Plaintiff's sex and gender, and rejections of

Defendant GUZMAN's sexual advances, by continuing to subject Plaintiff to a hostile work environment, sexual harassment, sexual assault, sexual battery, and discrimination on the basis of Plaintiff's sex and gender.

58.    Around 2017, Defendant GUZMAN made these comments weekly, forcing Plaintiff to avoid Defendant GUZMAN and Defendant GUZMAN's sexual advances.

59.    Defendant GUZMAN constantly told Plaintiff, *"I can see your boobs through your blouse,"* [sic] *"Your lipstick is a big turn on for me," "I can see how tight your jeans are," "I like the way your hair falls on your back,"* and *"I cannot wait to pull your hair."*

60.    Whenever Plaintiff wore suspenders, Defendant GUZMAN told Plaintiff, *"All I see on you is the suspenders and nothing else,"* and *"I can see myself pulling you by the suspenders."* Plaintiff was forced to stop wearing suspenders in an attempt to prevent these comments from Defendant GUZMAN.

61.    Throughout Plaintiff's employment, Defendant GUZMAN licked Defendant GUZMAN's lips in a sexual nature and made sexual moans and noises towards Plaintiff.

62.    Throughout Plaintiff's employment, Defendant GUZMAN constantly bumped into Plaintiff while Plaintiff was walking in the office.

Defendant GUZMAN bumped into Plaintiff, rubbing himself against Plaintiff, at least twice a week.

63.    Throughout Plaintiff's employment, Defendant GUZMAN bumped into Plaintiff, forcing Plaintiff to almost fall over. Pretending to prevent Plaintiff from falling over, Defendant GUZMAN used this as an excuse to grab, touch, grope, and fondle Plaintiff.

64.    Defendant GUZMAN created a hostile work environment for Plaintiff because of Plaintiff's sex and gender.

65.    Defendant GUZMAN disparately treated and discriminated against Plaintiff because of Plaintiff's sex and gender.

66.    Defendant GUZMAN sexually harassed, sexually assaulted, and sexually battered Plaintiff.

67.    Defendant GUZMAN retaliated against Plaintiff because of Plaintiff's complaints of sexual harassment, sexual assault, sexual battery, discrimination based on Plaintiff's sex and gender, and rejections of Defendant GUZMAN's sexual advances, by continuing to subject Plaintiff to a hostile work environment, sexual harassment, sexual assault, sexual battery, and discrimination on the basis of Plaintiff's sex and gender.

68.    Between 2018 to 2019, Plaintiff repeatedly complained to Plaintiff's Office Supervisor, Servando Chavez. Plaintiff told Mr. CHAVEZ, "Mr. Guzman makes me very uncomfortable because of his comments" and

"You know what happened in Barstow." Mr. CHAVEZ told Plaintiff, ***"I know, I know,"*** and ***"just forget about it and do what he tells you."***

69.     Defendant GUZMAN created a hostile work environment for Plaintiff because of Plaintiff's sex and gender.

70.     Defendant GUZMAN disparately treated and discriminated against Plaintiff because of Plaintiff's sex and gender.

71.     Defendant GUZMAN retaliated against Plaintiff because of Plaintiff's complaints of sexual harassment, sexual assault, sexual battery, discrimination based on Plaintiff's sex and gender, and rejections of Defendant GUZMAN's sexual advances, by continuing to subject Plaintiff to a hostile work environment, sexual harassment, sexual assault, sexual battery, and discrimination on the basis of Plaintiff's sex and gender.

72.     Around 2019, Plaintiff told Defendant GUZMAN, "You talking to me like that makes me very uncomfortable" and "stop making comments like that because it really bothers me."

73.     In retaliation to Plaintiff's rebuffs of Defendant GUZMAN's constant sexual advances, Defendant GUZMAN called Plaintiff ***"stupid"*** and an ***"idiot."***

74.     Defendant GUZMAN retaliated against Plaintiff because of Plaintiff's complaints of sexual harassment, sexual assault, sexual battery, discrimination based on Plaintiff's sex and gender, and rejections of

Defendant GUZMAN's sexual advances, by continuing to subject Plaintiff to a hostile work environment, sexual harassment, sexual assault, sexual battery, and discrimination on the basis of Plaintiff's sex and gender.

75. Throughout Plaintiff's employment, Defendant GUZMAN leaned over Plaintiff while Plaintiff was at Plaintiff's desk, brushing himself and pressing himself against Plaintiff so that Plaintiff could not move.

76. Throughout Plaintiff's employment, Defendant GUZMAN, placed Defendant GUZMAN's hand on top of Plaintiff's hand while Plaintiff was using the mouse on Plaintiff's computer. While Defendant GUZMAN did this, Defendant GUZMAN licked Defendant GUZMAN's lips, made sexual sounds and noises, and made comments including, but not limited to, *"I smell your perfume."*

77. Throughout Plaintiff's employment, Defendant GUZMAN rubbed Defendant GUZMAN's penis against Plaintiff's buttocks. Plaintiff repeatedly told Defendant GUZMAN, "Please stop doing this, you need to stop doing this." Defendant GUZMAN responded, *"When I come close to you, I know I am doing it quickly so nobody sees."*

78. Throughout Plaintiff's employment, whenever Plaintiff was facing the copy machine, fax machine, or printer, Defendant GUZMAN walked by and rubbed and forced Defendant GUZMAN's hand from Plaintiff's neck

down to Plaintiff's buttocks, rubbed Plaintiff's neck, grabbed and touched Plaintiff's shoulders, and quickly pulled Plaintiff's hair.

79. Defendant GUZMAN sexually harassed, sexually assaulted, and sexually battered Plaintiff.

80. Defendant GUZMAN retaliated against Plaintiff because of Plaintiff's complaints of sexual harassment, sexual assault, sexual battery, discrimination based on Plaintiff's sex and gender, and rejections of Defendant GUZMAN's sexual advances, by continuing to subject Plaintiff to a hostile work environment, sexual harassment, sexual assault, sexual battery, and discrimination on the basis of Plaintiff's sex and gender.

81. Defendant GUZMAN did the same to Plaintiff's co-worker, Tina Hill, who said, "You know how he is, he is always grabbing and touching people," and "Well nothing happened to him after Barstow."

82. Throughout Plaintiff's employment, Defendant GUZMAN told Plaintiff, ***"You and I together can be a powerful couple because I am not happy with my wife, and I will leave her for you," "I want to take you out," "I am a very good kisser," "I am the best kisser," "I am a very good dancer," "You turn me on," "We can make it,"*** and ***"I want to be with you."***

83. On several occasions, Defendant GUZMAN told Plaintiff, ***"You turn me on,"*** as Defendant GUZMAN looked at Plaintiff while licking

Defendant GUZMAN's lips and then looked down Defendant GUZMAN's pants, asking, *"Can you see how much you turn me on?"*

84.    Around June of 2019, Defendant GUZMAN yelled from across the office at Plaintiff, **"You are so stupid," "You are an idiot,"** and **"You are dumb."**

85.    Throughout Plaintiff's employment, when Plaintiff complained to Defendant GUZMAN, Defendant GUZMAN said, ***"do not talk to me like that or it will get worse."***

86.    Throughout Plaintiff's employment, Defendant GUZMAN walked by Plaintiff's desk ten to fifteen times a week while grabbing, squeezing, rubbing, and touching Plaintiff's shoulder or pulling Plaintiff's hair.

87.    Throughout Plaintiff's employment, Defendant GUZMAN told Plaintiff, ***"You look delicious," "You look so fine,"*** and ***"You look so sexy today."***

88.    Throughout Plaintiff's employment, when Plaintiff asked Defendant GUZMAN for help, Defendant GUZMAN just ignored Plaintiff.

89.    Around the summer of 2019, Defendant GUZMAN approached Plaintiff's desk, as Defendant GUZMAN always did, saying, ***"I want to be with you and take you out for dinner and dancing."*** Hoping to stop further sexual advances, comments, or touching from Defendant GUZMAN, Plaintiff said, "You won't give up, will you? You are just going to keep on

saying and doing things a married man shouldn't be doing. Why? I want to know why you won't quit even after I tell you year after year I am not interested in you. I am so tired, you need to please stop." Defendant GUZMAN responded by leaning over Plaintiff while licking Defendant GUZMAN's lips and looking Plaintiff up and down, stating, ***"I am not going to because I know you like it"*** and ***"I know you are easy."***

90.    Plaintiff responded, "I do not like it and it makes me very uncomfortable." Plaintiff then asked, "Who told you that I am easy?" Defendant GUZMAN responded, ***"If you agree to go out with me, I will tell you."***

91.    Around November of 2019, Plaintiff let Defendant GUZMAN use some of Plaintiff's CBD cream because Defendant GUZMAN's hands were in pain.

92.    After Defendant GUZMAN used the cream, Defendant GUZMAN returned to Plaintiff's desk and told Plaintiff, ***"I have a funny story to share with you,"*** and begins to tell Plaintiff that Defendant GUZMAN went to go urinate. Plaintiff immediately stopped Defendant GUZMAN and said "TMI" [sic] meaning too much information. Defendant GUZMAN insisted that it was funny and continued to tell the story to Plaintiff. Defendant GUZMAN told Plaintiff that ***"I grabbed my dick to urinate and I started to feel it was on fire."*** Plaintiff looked away but Defendant GUZMAN continued, ***"the***

*cream was on my hands. It's funny. I wanted to clean it off and started to grab it but it just aroused me. If you looked at it right now, you can tell I am aroused. I just told some of the guys I touched myself with your cream."* Plaintiff told Defendant GUZMAN that Defendant GUZMAN was gross and to leave.

93.     Around January of 2020, Defendant GUZMAN approached Plaintiff to review Plaintiff's work on a client. As Defendant GUZMAN approached Plaintiff, Plaintiff told Defendant GUZMAN, "Please do not make any sexual derogatory comments, I need to help this client." Defendant GUZMAN then grabbed and squeezed Plaintiff's shoulder and said, *"I don't give a fuck if it's you or anybody else, I am going to talk to you however the fuck I want.  [sic]"*

94.     Defendant GUZMAN created a hostile work environment for Plaintiff because of Plaintiff's sex and gender.

95.     Defendant GUZMAN disparately treated and discriminated against Plaintiff because of Plaintiff's sex and gender.

96.     Defendant GUZMAN sexually harassed, sexually assaulted, and sexually battered Plaintiff.

97.     Defendant GUZMAN retaliated against Plaintiff because of Plaintiff's complaints of sexual harassment, sexual assault, sexual battery, discrimination based on Plaintiff's sex and gender, and rejections of

Defendant GUZMAN's sexual advances, by continuing to subject Plaintiff to a hostile work environment, sexual harassment, sexual assault, sexual battery, and discrimination on the basis of Plaintiff's sex and gender.

98.    Throughout Plaintiff's employment, Defendant GUZMAN laughed at Plaintiff whenever Defendant GUZMAN made the aforementioned sexual advances and comments to Plaintiff, or whenever Plaintiff complained and told Defendant GUZMAN to stop.

99.    Throughout Plaintiff's employment, in retaliation for not heeding Defendant GUZMAN's sexual advances and instead rebuffing them and complaining, Defendant GUZMAN belittled, intimidated, and criticized every detail of Plaintiff's work by telling Plaintiff that Plaintiff was not knowledgeable and incompetent. Defendant GUZMAN made Plaintiff feel dumb, making comments such as, *"How stupid are you?"*

100.   Defendant GUZMAN retaliated against Plaintiff because of Plaintiff's complaints of sexual harassment, sexual assault, sexual battery, discrimination based on Plaintiff's sex and gender, and rejections of Defendant GUZMAN's sexual advances, by continuing to subject Plaintiff to a hostile work environment, sexual harassment, sexual assault, sexual battery, and discrimination on the basis of Plaintiff's sex and gender.

101.   Throughout Plaintiff's employment, there was not a single week in which Defendant GUZMAN did not sexually harass and make sexual advances towards Plaintiff.

102.   Around March 20, 2020, Plaintiff was washing a cup in the kitchen. Defendant GUZMAN approached Plaintiff from behind and asked, *"Why the sad face?"* Plaintiff expressed to Defendant GUZMAN that Plaintiff was worried about falling behind work because of coronavirus and that Plaintiff felt guilty because many people depend on receiving their funds from Plaintiff. Defendant GUZMAN then moved very close to Plaintiff and whispered, *"You know what you need to do, and I will make everything easy for you," "I will take care of everything, you know what you have to do," "I will make everything go away,"* and *"I will make you shine like a star."* Defendant GUZMAN made these comments as Defendant GUZMAN was licking Defendant GUZMAN's lips, and bumping and rubbing Defendant GUZMAN's elbow on Plaintiff. Plaintiff immediately ran to Plaintiff's desk as Defendant GUZMAN laughed.

103.   Around March 20, 2020, Defendant GUZMAN walked up to Plaintiff from behind while Plaintiff was at the printer and again asked Plaintiff, *"Why are you so sad?"* Plaintiff expressed that Plaintiff wished Plaintiff had more time for clients. Defendant GUZMAN told Plaintiff, *"Many times I have had this conversation with Servando. I tell him some*

*people are just not fit for the job. I don't mean you [Plaintiff], not at all."*
After Defendant GUZMAN said this, Defendant GUZMAN began to move closer and closer to Plaintiff, saying, "*I tell [the supervisors] they are stupid. Some people are weak, stupid, can't learn. Not you [Plaintiff]. Some people should not have this job. I think there are people that cannot handle it or are too dumb to. But not you [Plaintiff]. You are ok. You are alright. But like I said, I can make it all go away so easy for you. All you have to do is, you know, do what you have to do. I know you know what I mean. You know what you have to do. You do what I want you to do, and you will be a shining star.*"

104.   Defendant GUZMAN, now inches away from Plaintiff, repeated himself several times, licking Defendant GUZMAN's lips and looking Plaintiff up and down, *"You know what you have to do. You do what I want you to do, and you will be a shining star. I will make everything go away. You know what you have to do."* Defendant GUZMAN noticed how terrified and nervous Plaintiff was as Plaintiff began to shake. Defendant GUZMAN then began to laugh as Plaintiff ran back to Plaintiff's desk crying.

105.   Defendant GUZMAN engaged in quid pro quo sexual harassment.

106.   Defendant GUZMAN created a hostile work environment for Plaintiff because of Plaintiff's sex and gender.

107.   Defendant GUZMAN disparately treated and discriminated against Plaintiff because of Plaintiff's sex and gender.

108.   Defendant GUZMAN sexually harassed, sexually assaulted, and sexually battered Plaintiff.

109.   Defendant GUZMAN retaliated against Plaintiff because of Plaintiff's complaints of sexual harassment, sexual assault, sexual battery, discrimination based on Plaintiff's sex and gender, and rejections of Defendant GUZMAN's sexual advances, by continuing to subject Plaintiff to a hostile work environment, sexual harassment, sexual assault, sexual battery, and discrimination on the basis of Plaintiff's sex and gender.

110.   Around late March, 2020, Plaintiff called Mr. Hunter in regards to what happened and the sexual harassment, assault, and battery Plaintiff was facing. Mr. Hunter told Plaintiff to talk to Amanda. Mr. Hunter also informed Plaintiff that while Defendant GUZMAN was in Barstow, Defendant GUZMAN made sexual advances towards a Client's wife and that Defendant GUZMAN has been caught watching pornography inside the office. Mr. Hunter additionally informed Plaintiff that Plaintiff was not the only one who Defendant GUZMAN sexually harassed and made sexual advances towards. Mr. Hunter informed Plaintiff that Mr. Hunter previously made Mr. Hunter's concerns very clear to upper management in regards to Defendant GUZMAN.

111.   Around March 26, 2020, Plaintiff complained in an email to

Amanda LANDAZURI and Alfreda Armstrong:

> I would like to be able to have a discussion with you
> both about a matter that is affecting me tremendously at
> work. It has been going on for years and it is affecting
> me to the point I am having great difficulty doing my job
> and now at home.
> There is an individual who has a history. Yet has gotten away with so
> much in the past.
> This is why me and others have put up with the abuse.
> We feel he will continue to get away with it. This is
> grotesque and I should not be suffering such discomfort
> and abuse.
> I will not be speaking for no anyone else. Just
> myself.
> I wish to speak with you both at the same time.
> My supervisor is aware this person makes me very
> uncomfortable.
> I have given my OS very "limited"
> details because I hoped it would go away. Me being a
> woman I will feel more comfortable speaking with you
> both.

112.   Around April 9, 2020, Defendant GUZMAN emailed Plaintiff in

regards to a case which Defendant GUZMAN was neither responsible for

nor supervising Plaintiff for. Plaintiff was being supervised by Mr. Hunter

for this case. Despite this, Defendant GUZMAN did this to have an excuse

to contact Plaintiff and in an attempt to have Plaintiff reach out to Defendant

GUZMAN, further harassing and retaliating against Plaintiff. The email

stated:

> Please provide status of ALJ Case for…by COB
> tomorrow 4/10/2020. The tickets for the proofs

requested on the DWO1 expired 4/1/2020. This case is
now 34 days old.
Please reply to all.
Also, I did a quick review of the PERC review and the
issues on the DW01. One small advice I want to give you, is
please try to keep it simple…. If you need further
clarification, please feel free to ask Mr. Hunter or I.

113.   Around April 20, 2020, Defendant GUZMAN emailed Plaintiff

even though Defendant GUZMAN was told not to have any contact with

Plaintiff. Moreover, the matter and client in which Defendant GUZMAN's

email was related to was not a matter which was Defendant GUZMAN's

responsibility, but Mr. Hunter's. Defendant GUZMAN additionally was only

supposed to follow up on cases which were 50 days old, this case was only

28 days old. The email stated:

I am not sure if Monica has reach out to you for
satus of the WEBALJ case…It's now at 28 days
old on the site.
I see your tickets expired on 4/09/2020. I see you are
waiting on a LETTER ISM from son about LA BD SON
issue. So, question you want a letter to confirm BD living
arrangements from son? Her statement under
penalty of perjury that she does not contribute is
not enough?
Also, you listed that you are waiting for proof od F/S (Food
stamos). Why? If the LA is BD, it's not needed. Also, listed
is KIFD DOB, not sure what that request is for. Lol.
Please provide status of the case by April 24, 2020.
Please reply to this email and to all.

114.   Defendant GUZMAN disparately treated and discriminated against

Plaintiff because of Plaintiff's sex and gender.

115.   Defendant GUZMAN created a hostile work environment for Plaintiff because of Plaintiff's sex and gender.

116.   Defendant GUZMAN retaliated against Plaintiff because of Plaintiff's complaints of sexual harassment, sexual assault, sexual battery, discrimination based on Plaintiff's sex and gender, and rejections of Defendant GUZMAN's sexual advances, by continuing to subject Plaintiff to a hostile work environment, sexual harassment, sexual assault, sexual battery, and discrimination on the basis of Plaintiff's sex and gender.

117.   Around April 21, 2020, Plaintiff complained in an email to Mr. CHAVEZ and Ms. LANDAZURI:

> This is the 2nd time Guzman is going over one of my Perc/Peer and asking status. I don't mind he is doing his job. But is the way he addresses his questions. Like I am an idiot.
> Last week he was asking on a case that belonged to Hunter and I had not submitted it for review yet pending proofs. Hunter had to tell him to leave his cases alone. Today I get a case from Monica. I do not have the proofs. Yet his email makes me feel like I am stupid or something. The way he asks the questions. In the past Monica has requested proof of food stamps. I know you spoke with her. I just didn't know I had another case I had for her asking for poofs of food stamps. I have not received any thing back from this bene.
> The way to talks to me makes me very nervous. I am shaking right now and my stomach hurts just thinking how he makes me feel. I don't have any of these issues anyone else. It's just him. I know I am not the only one he treats this way.
> It makes me question myself. My capabilities. I freeze

every time I have to ask him for anything. I feel I
am either forgetting everything because I get so
scared I draw a blank in my head and I can't think
straight. It's been way too many times he makes
me feel like I am a worthless idiot.
I have made mistakes, I know I am not perfect. But is the
effect he has on me. Always being so mean.
When another TE reviews my case, they make
corrections, and return the case to me. Without
making feel so awful.
I have been to his desk before and his comments like: YOU
don't know this??? HOW LONG have you been doing this
job? Didn't you get training on THIS!!!???
I have told you before he makes me very uncomfortable.
He constantly humiliates me. THIS CASE IS NOT OLD.

118.   Around April 21, 2020, Plaintiff, crying hysterically, called Ms.

LANDAZURI in order to complain about the email and continued

harassment and retaliation by Defendant GUZMAN. Ms. LANDAZURI told

Plaintiff, ***"You are overreacting."***

119.   Plaintiff attempted to reach and call the EEO to make a complaint

on May 18, May 21, and May 26 of 2020.

120.   Plaintiff's calls were finally returned on May 28, 2020, the date the

EEO counselor recorded as Plaintiff's initial contact with the EEO.

121.   Around July 16, 2020, EEO Counselor Marzell Malone incorrectly

stated that Plaintiff's last contact with Defendant GUZMAN was March 13,

2020 and therefore Plaintiff's "contact is untimely by one day." This is false,

for Plaintiff had contact with Defendant GUZMAN occurred on March 20,

2020, April 9, 2020, and April 20, 2020. Moreover, the harassment and its

effects are continuing. Therefore, Plaintiff contacted the EEO within the required 45-day timeframe.

122. Around July 16, 2020, Plaintiff received, "Notice of the Right to File a Formal Equal Employment Opportunity Complaint of Discrimination."

123. On July 28, 2020, Plaintiff mailed the Formal Complaint Form SSA-679, which was sent certified mail and postmarked for July 28, 2020. Plaintiff therefore filed the Formal Complaint in a timely manner, within the 15-day timeframe.

124. Around August 21, 2020, David Greene, Management Analyst/Executive Assistant, emailed Plaintiff:

> Thank you for you call to the OCREO Front Office. As of today, we have not received your Form 678. Due to CoVid closures, we cannot receive physical mail at this time. If you can provide a scanned copy to ^DCHR OCREO Formal EEO Complaints or [DCHR.OCREO.Formal.EEO.Complaints@ssa.gov]DCHR.OCREO.Formal.EEO.Complaints@ssa.gov, we will process it for you.

125. Around August 21, 2020, Plaintiff replied to Mr. Greene's email:

> Marzell Malone LLC was my EEO counselor ( mmalone372@aol.com ) She completed the SSA 675 and informed me she would mail you a copy with my original 13 page memo I provided upper management. Since you have stated the office is not receiving mail I would like to know if you

receive it? If not, I will be more than happy to
email it to you.
In the SSA 675 EEO Counselor's Report Mrs. Malone has
several discrepancies.
She stated I could add corrections when
completing the SSA 679.
The most damaging discrepancy is on page 3 DATE OF
INCIDENT:
03/13/2020. At first I mentioned to Mrs. Malone
Mr. Guzman made his advances "on the last
Friday we worked out of the office" (we were all
sent home to telework due to COVID-19 ) She
used 03/13/2020 even after I corrected her several
times it was 03/20/2020. On the Timeliness
Notice Mrs. Malone stated "it would appear that
the contact is untimely by one day "
I have done everything in my power to file all necessary
documents and forms on time. Please note on
April 20, 2020 at 11:35 am Mr. Guzman the
individual whom has been sexually harassing me
for years sent me an email on a case he was NOT
supposed to review. He has done this numerous
times to get me to talk to him and in turn he make
inappropriate sexually explicit comments to me. I
notified the supervisor and she immediately
contacted Mr. Guzman to not contact me
regarding cases not assigned to him for me.
Following will be pictures of my SSA 678 and
SSA 679 with proofs of USPS First-Class mail
receipts.
Lastly; is it possible to amend my formal
complaint or add further statements? And if
possible, will doing so effect the timeliness of my
complaints?

126.   Around August 21, 2020, Mr. Greene replied:

We have not received any documents regarding your
case. If you have proof of delivery, you can provide that
as well with the documents you send. We will use the
date of receipt as your file date. You can provide any

amendments with them as well.

127.   Around August 21, 2020, Plaintiff emailed the necessary documents and proof to show that Plaintiff abided by all EEO filing deadlines and requirements.

128.   Throughout Plaintiff's employment, several of Plaintiff's co-workers have also been sexually harassed, sexually assaulted, and sexually battered by Defendant GUZMAN.

129.   Throughout MM's, Plaintiff's co-worker,  employment, Defendant GUZMAN texted MM, asking MM to sleep with Defendant GUZMAN. Defendant GUZMAN also made similar comments to MM such as, *"Your ass looks good"* and *"I want to sleep with you."* Defendant GUZMAN additionally, rubbed MM's shoulders and back and looked down MM's blouse throughout MM's employment at Defendant SSA. In around 2019, MM complained about this to Ms. LANDAZURI, but nothing was done.

130.   Throughout SF's (Plaintiff's co-workers) employment, SF was sexually harassed and sexually assaulted by Defendant GUZMAN in a similar fashion to Plaintiff. Defendant GUZMAN was constantly talking about Defendant GUZMAN's penis and told SF, *"Wear that more often, because I can see your nipples," "You need to suck my penis, because that is a criteria to be with me," "I told you what you got to do. Are you ready? You got to put this big thing in your mouth," "Suck my penis," "I don't*

*even like black girls," "Mine is big," "Well, you have to suck my dick too," "I like your nipples,"* and *"You ready to suck it?"*[sic] Defendant GUZMAN also bumped into SF in a similar fashion to how Defendant GUZMAN bumped into Plaintiff, so that Defendant GUZMAN could rub himself against SF's breasts and body.

131.   Defendants SSA and GUZMAN created a hostile work environment for Plaintiff because of Plaintiff's sex and gender.

132.   Defendants SSA and GUZMAN disparately treated and discriminated against Plaintiff because of Plaintiff's sex and gender.

133.   Defendant GUZMAN sexually harassed, assaulted, and battered Plaintiff.

134.   Around February 1, 2021, Defendant GUZMAN again violated Defendant GUZMAN's instruction not to contact Plaintiff, and emailed Plaintiff, *"Hope you have a nice weekend ☺! I've completed my call backs. See remarks in green below."*

135.   Around February 2, 2021, Plaintiff immediately complained to Lori gov and Malia Taylor stating,

> This morning I notice an email from Mr. Guzman inn my mail box. Please tell me what is going on? Is he now allowed to do such a thing? Knowing how he operates I am concern this is a way he is using to contact mee. Open a door to start communicating. Please address this issue with management if you would. It was veery disturbing he would "respond to all in an email" when he knows very well he is

NOT to contact me and others in the office in ANY WAY. This made me extremely uncomfortable and nervous.

136.   Respondents GUZMAN and SSA disparately treated and discriminated against Plaintiff because of Plaintiff's sex and gender.

137.   Respondents GUZMAN and SSA created a hostile work environment for Plaintiff because of Plaintiff's sex and gender.

138.   Defendants SSA and GUZMAN retaliated against Plaintiff because of Plaintiff's complaints of sexual harassment, sexual assault, sexual battery, discrimination based on Plaintiff's sex and gender, and rejections of Defendant GUZMAN's sexual advances, by continuing to subject Plaintiff to a hostile work environment, sexual harassment, sexual assault, sexual battery, and discrimination on the basis of Plaintiff's sex and gender.

139.   Around March 8, 2021, Defendant SSA informed Plaintiff a letter which stated, ***"We conducted an investigation of your allegations from May 11-November 5, 2020. The purpose of the investigation was to determine whether any harassment had occurred. The investigator(s) interviewed and obtained written statements from twelve witnesses. The Deciding Management Official carefully reviewed all of the evidence, including your written statement, the written statements of the other witnesses, and all documentary or other evidence you provided or that the investigators obtained during the investigation. After carefully reviewing***

*this information, the Deciding Management Official concluded that the allegations are sufficiently severe and pervasive to mee the legal definition of harassment."*

140.   Around March 17, 2021, less than two weeks after Defendant SSA concluded that Plaintiff's *"allegations are sufficiently severe and pervasive to meet the legal definition of harassment,"* Defendant SSA allowed Defendant GUZMAN to email plaintiff again in further discrimination, harassment, and retaliation. Defendant GUZMAN emailed Plaintiff on March 17, 2021.

141.   Defendants GUZMAN and SSA disparately treated and discriminated against Plaintiff because of Plaintiff's sex and gender.

142.   Defendants GUZMAN and SSA created a hostile work environment for Plaintiff because of Plaintiff's sex and gender.

143.   Defendants GUZMAN and SSA retaliated against Plaintiff because of Plaintiff's complaints of sexual harassment, sexual assault, sexual battery, discrimination based on Plaintiff's sex and gender, and rejections of Defendant GUZMAN's sexual advances, by continuing to subject Plaintiff to a hostile work environment, sexual harassment, sexual assault, sexual battery, and discrimination on the basis of Plaintiff's sex and gender.

144.   Around April 26, 2021, the Equal Employment Opportunity Commission agreed with Plaintiff's appeal and found that Plaintiff timely

contacted an EEO Counselor for Plaintiff's initial Complaints of sexual harassment, assault, battery, discrimination, and retaliation.

145.   Around January 28, 2022, Defendants SSA found that Defendant GUZMAN's conduct was unwelcome, the conduct was based on Plaintiff's sex, Defendant GUZMAN's conduct were sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and to create an abusive working environment, Defendant GUZMAN's comments and physical gestures and unwanted touching rise to the level of severity and pervasiveness, and Defendant GUZMAN's words and actions were sufficiently material to deter protected activity.

146.   Defendant SSA additionally found that Defendant GUZMAN had the authority to review Plaintiff's work, and his assessment of Plaintiff's work was reported to Plaintiff's other supervisors.

147.   Defendants SSA and GUZMAN retaliated against Plaintiff because of Plaintiff's complaints of sexual harassment, sexual assault, sexual battery, discrimination based on Plaintiff's sex and gender, and rejections of Defendant GUZMAN's sexual advances, by continuing to subject plaintiff to a hostile work environment, sexual harassment, sexual assault, sexual battery, and discrimination on the basis of Plaintiff's sex and gender.

148.   Defendants discriminated against, disparately treated, and sexually harassed Plaintiff because of Plaintiff's sex and gender.

149.   Defendant GUZMAN sexually harassed, assaulted, and battered Plaintiff.

150.   Defendant GUZMAN engaged in quid pro quo sexual harassment.

151.   Defendants created a hostile work environment for Plaintiff because of Plaintiff's sex and gender.

152.   Defendants retaliated against Plaintiff because of Plaintiff's complaints of sexual harassment, sexual assault, sexual battery, quid pro quo sexual harassment, discrimination based on Plaintiff's sex and gender, and rejections of Defendant GUZMAN's sexual advances, by continuing to subject Plaintiff to a hostile work environment, sexual harassment, sexual assault, sexual battery, and discrimination on the basis of Plaintiff's sex and gender.

153.   Defendants disparately treated, disparately impacted, and discriminated against Plaintiff because of Plaintiff's sex and gender; subjected Plaintiff to a hostile work environment, sexual harassment, sexual assault, sexual battery, and quid pro quo sexual harassment; and retaliated against Plaintiff because of Plaintiff's sex and gender, and because Plaintiff complained of/objected to discriminatory conduct, sexual harassment, sexual assault, sexual battery, quid pro quo sexual harassment, and hostile work environment.

154.   As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer from anxiety, panic attacks, nightmares, weight gain, major headaches, loss of sleep, stress, depression, suicidal ideations, and severe emotional distress.

155.   Plaintiff has been forced to seek help from a therapist and doctor because of the effects the discrimination, hostile work environment, sexual harassment, sexual assault, sexual battery, and retaliation caused, and continues to cause Plaintiff. Because of this, Plaintiff has been prescribed and continues to be prescribed Xanax, Lexapro, and Buspirone for Plaintiff's panic attacks, anxiety, depression, and severe emotional distress.

156.   Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

157.   As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

158.   Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

159.   Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting conditions as a result of Defendants' discriminatory conduct.

160.   Plaintiff claims alternatively (in the event Defendant Claims so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable laws pertaining to Independent Contractors. Furthermore, in such, case, Plaintiff claims that Defendant owed and breached its duty to Plaintiff to prevent the harassment/discrimination/retaliation and is liable therefore for negligence.

161.   Plaintiff claims that Defendants sexually harassed, assaulted, and battered Plaintiff, created a hostile work environment for Plaintiff, unlawfully discriminated against Plaintiff, disparately treated Plaintiff, disparately impacted Plaintiff, and retaliated against Plaintiff because of Plaintiff's sex and gender.

162.   The above are just some of the examples of the unlawful discrimination and disparate treatment to which the Defendants subjected the Plaintiff on a continuous and on-going basis throughout Plaintiff's employment.

## FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### Against All Defendants

163.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs, inclusive, as though set forth fully herein.

164.   Title VII states in relevant part as follows:

"(a) Employer practices: It shall be an unlawful employment practice for an employer: (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

165.   This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants.

166.   This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of

Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex and gender.

167.   Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by harassing, allowing, and otherwise discriminating against Plaintiff because of Plaintiff's sex and gender; and the sexual harassment, sexual assault, sexual battery, hostile work environment, and retaliation.

168.   As a result of the above-described conduct, Plaintiff Doe has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

169.   Defendants violated the above and Plaintiff suffered numerous damages as a result.

## SECOND CAUSE OF ACTION
**FOR HOSTILE WORK ENVIRONMENT AND QUID PRO QUO
SEXUAL HARASSMENT UNDER TITLE VII
Against All Defendants**

170.   The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

171.   Title VII protects employees from being subjected to a Hostile Work Environment and Quid Pro Quo Sexual harassment.

172.   Unwelcome conduct constitutes sexual harassment when "submission to such conduct is made wither explicitly or implicitly a term or condition of any individual's employment."  29 C.F.R. 1604. 11(a)(2016).

173.   Where employment opportunities or benefits are granted because of an individual's submission to the employer's sexual advances or requests for sexual favors, the employer may be held liable for unlawful quid pro quo sexual harassment.

174.   As discussed above, Plaintiff was subjected to both a hostile work environment and quid pro quo sexual harassment by her supervisor, Defendant GUZMAN and Defendant SSA.

175.   Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by subjecting Plaintiff to a hostile work environment and quid pro quo sexual harassment.

176.   As a result of the above-described conduct, Plaintiff Doe has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

177.   Defendants violated the above and Plaintiff suffered numerous damages as a result.

<u>**THIRD CAUSE OF ACTION**</u>
**FOR RETALIATION UNDER TITLE VII**
**Against All Defendants**

178.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs, inclusive, as though set forth fully herein.

179.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or

participated in any manner in an investigation, proceeding, or hearing under this subchapter."

180.   Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful employment practices of Defendants, including but not limited to continued discrimination, continued harassment, and continued hostile work environment.

181.   As a result of the above-described conduct, Plaintiff Doe has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

182.   Defendants violated the above and Plaintiff suffered numerous damages as a result.

### FOURTH CAUSE OF ACTION
### FOR SEXUAL ASSAULT
### Against Defendant GUZMAN

183.   The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

184.   As described herein above, Defendant GUZMAN caused, and intended to cause, imminent apprehension of a harmful and offensive contact with the person of another. In doing these acts, Defendant GUZMAN caused, and intended to cause, imminent apprehension of a harmful and offensive contact with Plaintiff. At no time did Plaintiff consent to any of the acts of Defendant GUZMAN described herein.

185.   As a result of Defendant GUZMAN's conduct, Plaintiff was placed in apprehension and fear for her physical well-being.

186.   Defendant GUZMAN did the aforementioned acts with the intent to cause a harmful or offensive contact with an intimate part of Plaintiff's person and would offend a reasonable sense of personal dignity.

187.   As a direct, legal, and proximate result of the acts of Defendant GUZMAN, Plaintiff sustained serious and permanent injuries to her person, all of the damage in an amount to be shown according to proof and within the jurisdiction of the Court.

188.   Plaintiff has suffered or will suffer economic loss or disadvantage or personal injury, including but not limited to, emotional distress or the

violation of a statutory or constitutional right, as a result of the conduct described above.

189.  As a proximate result of the wrongful acts of Defendant GUZMAN, Plaintiff has suffered and will continue to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress. Plaintiff has further experienced other physical symptoms arising from the wrongful acts of Defendant GUZMAN. Plaintiff will continue to experience said pain and physical and emotional suffering for a period in the future she cannot presently ascertain, all in an amount subject to proof at the time of trial.

190.  The conduct of Defendant was oppressive, malicious and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and were carried out with a conscious disregard of her right to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code section 3294, entitling Plaintiff to punitive damages against Defendant in an amount appropriate to punish and set an example of Defendant.

191.  Defendant violated the above and Plaintiff suffered numerous damages as a result.

### FIFTH CAUSE OF ACTION
### FOR SEXUAL BATTERY
### Against Defendant GUZMAN

192.   Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

193.   As described herein above, Defendant GUZMAN caused, and intended to cause, a harmful or offensive contact with Plaintiff's person.

194.   At no time did Plaintiff consent to any of the acts of Defendant GUZMAN described herein.

195.   A reasonable person in Plaintiff's situation would have been offended by Defendant GUZMAN's actions and touching of Plaintiff.

196.   As a direct, legal, and proximate result of the acts of Defendant GUZMAN, Plaintiff sustained serious and permanent injuries to her person, all of her damage in an amount to be shown according to proof and within jurisdiction of the Court.

197.   Plaintiff has suffered or will suffer economic loss or disadvantage or personal injury, including but not limited to, emotional distress or the violation of a statutory or constitutional right, as a result of the conduct described above.

198.   As a proximate result of the wrongful acts of Defendant GUZMAN, Plaintiff has suffered and will continue to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress.

Plaintiff has further experienced other physical symptoms arising from the wrongful acts of Defendant GUZMAN. Plaintiff will continue to experience said pain and physical and emotional suffering for a period in the future she cannot presently ascertain, all in an amount subject to proof at the time of trial.

199.    The conduct of Defendant was oppressive, malicious and despicable in that it was intentional and done in conscious disregard for the rights and safety of others, and were carried out with a conscious disregard of her right to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code section 3294, entitling Plaintiff to punitive damages against Defendant in an amount appropriate to punish and set an example of Defendant.

200.    Defendants violated the above and Plaintiff suffered numerous damages as a result.

### SIXTH CAUSE OF ACTION
### FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
Against all Defendant GUZMAN

201.    Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

202.    By engaging in the above-described conduct, Defendant engaged in extreme and outrages conduct with the intention of causing, or reckless disregard of the probability of causing, emotional distress.

203.   Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and severe emotional distress.

204.   Plaintiff's damages were the actual and proximate causation of the emotional distress caused by Defendant's outrageous conduct.

205.   Defendant's conduct was reckless and with a conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to an award of punitive damages against Defendants in an amount to be determined by proof at trial.

206.   Defendants violated the above and Plaintiff suffered numerous damages as a result.

### SEVENTH CAUSE OF ACTION
### FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
Against Defendant GUZMAN

207.   The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

208.   Defendant was negligent in his conduct described above.

209.   Defendant owed Plaintiff a duty of care towards Plaintiff to not touch, grope, assault, and batter Plaintiff.

210.   Defendant owed Plaintiff a duty of care to act in a reasonable and ordinary manner so as not to cause Plaintiff any foreseeable harm.

211.   Defendant failed to use ordinary and reasonable care in order to avoid injury to Plaintiff.

212.   Defendant breached his duty of care towards Plaintiff and knew or should have reasonably known that he owed Plaintiff a duty of care and that he breached the duty of care.

213.   Plaintiff was damaged as a result of Defendant's conduct and Defendant's conduct was a substantial factor in bringing about Plaintiff's injuries.

214.   As a result of Defendant's negligent conduct, Plaintiff suffered and continues to suffer from anxiety, worry, mental anguish, loss of sleep, stress, depression, and severe emotional distress.

215.   The conduct of Defendant constitutes negligence and is actionable under the laws of the State of California.  As a direct and proximate result of the acts of Defendant, Plaintiff has suffered, without limitation, fear, embarrassment, anxiety, shame, humiliation, distress, shock, and severe emotional distress.

216.   Defendants violated the above and Plaintiff suffered numerous damages as a result.


**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in an amount which exceeds the jurisdiction of all lower courts for all damages including but not limited to compensatory damages, punitive damages, statutory damages, lost wages, back pay, front pay, attorney's fees, costs, interest, declaratory judgment,

1

injunctive relief, and all other damages as are just and proper to remedy

2

DEFENDANT'S unlawful employment practices.

3

4

5

Dated: April 28, 2022                    Respectfully Submitted,

6

**DEREK SMITH LAW GROUP, LLP**
Attorneys for Plaintiff

7

8

By: ___ /s/ *Matt E.O. Finkelberg*

9

Matt E.O. Finkelberg, Esq.
633 West 5th Street, Suite 3250
Los Angeles, CA 90071
(310) 602-6050

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY TRIAL DEMAND**

Plaintiffs hereby demands a jury trial on all causes of action and claims with respect to which Plaintiff has a right to jury trial.


Dated: April 28, 2022                    Respectfully Submitted,

**DEREK SMITH LAW GROUP, LLP**
Attorneys for Plaintiff

By:      /s/ *Matt E.O. Finkelberg*
Matt E.O. Finkelberg, Esq.
633 West 5th Street, Suite 3250
Los Angeles, CA 90071
(310) 602-6050

COMPLAINT